OPINION OF THE COURT
Ann O’Shea, J.
On April 2, 2015, the Administration for Children’s Services (ACS) filed a petition against respondent James S. Sr., alleging that he neglected his children, Jubilee S., Jamee S., and James S., by committing domestic violence against their mother, Ashley B., in their presence, and by violating an existing criminal court order of protection.[1] The respondent was properly served, and jurisdiction was deemed complete on May 26, 2015.
On February 1, 2016, ACS moved for summary judgment based on (1) an affidavit of Child Protective Specialist (CPS) Jasmine Frye; (2) a Family Court fact-finding order, entered on October 19, 2011 in NN-1776-78/11 (White, J.), finding that *637 respondent had “engaged in a continued course of physical and verbal abuse against the . . . mother in the presence of the children”; (3) a dispositional order entered in the same proceedings on February 1, 2012 (White, J.), requiring respondent to engage in and complete parenting skills, anger-management, and batterer’s accountability programs; (4) a certificate of disposition and four plea minutes in a Kings County Criminal Court proceeding (2013KN033521) against respondent in which he pleaded guilty to contempt and was sentenced to a conditional discharge, conditioned on his entering and completing a batterer’s intervention program and compliance with a full stay-away order of protection on behalf of the children’s mother and two of the children, Jamee and Jubilee; and (5) a final, five-year, full stay-away order of protection against respondent on behalf of Jamee, Jubilee, and their mother. The motion was denied by this court’s decision and order dated March 7, 2016, on the grounds that ACS failed to provide any evidence to corroborate a statement allegedly made by then 4V2-year-old Jubilee that respondent hit her mother all over her body. The court further held that ACS failed to provide competent evidence that respondent neglected the children by failing to complete the tasks required of him in the February 1, 2012 order of disposition.
ACS presented the same evidence at inquest, except that CPS Frye testified in person, and four oral report transmittals (ORTs)[2] were admitted into evidence as business records, but the narrative portions of those ORTs were excluded as inadmissible hearsay not subject to any exception (see Matter of Imani O. [Marcus O.], 91 AD3d 466 [2d Dept 2012]; Matter of Christy C. [Jeffrey C.], 74 AD3d 561, 562 [1st Dept 2010]; Matter of Imani B., 27 AD3d 645 [2d Dept 2006]).
As the court stated in its decision denying ACS’s summary judgment motion, to establish neglect pursuant to section 1012 (f) (i) (B) of the Family Court Act, the petitioner must prove, by a preponderance of the competent, material, and relevant evidence (Family Ct Act § 1046 [b] [i], [iii]), that (1) the child’s physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired, and (2) the actual or threatened harm to the child is due to the failure of the parent or caretaker to exercise a minimum degree of care in providing the child with proper supervision or *638 guardianship (Family Ct Act § 1012 [f]; Nicholson v Scoppetta, 3 NY3d 357, 368 [2004]; Matter of Kiara C. [David C.], 85 AD3d 1025, 1025-1026 [2d Dept 2011]). “Imminent danger” means “near or impending” danger, not merely possible (Nicholson, 3 NY3d at 369). Whether actual or threatened, the harm must be “serious . . . not just . . . what might be deemed undesirable parental behavior” (id.). These evidentiary standards must be met even upon inquest (Matter of MHP, 45 Misc 3d 1224[A], 2014 NY Slip Op 51704[U] [Fam Ct, Kings County 2014]; Matter of M/B Child, 8 Misc 3d 1001[A], 2005 NY Slip Op 50884[U] [Fam Ct, Kings County 2005]; see also Matter of Tammie Z., 66 NY2d 1, 3 [1985]; Matter of Amber C., 38 AD3d 538, 540 [2d Dept 2007]; Matter of Cassandra M., 260 AD2d 961 [3d Dept 1999]).
Domestic violence in the presence of a child may be a permissible basis upon which to make a finding of neglect (see e.g. Kiara C., 85 AD3d at 1026). However, exposing a child to acts of domestic violence “is not presumptively neglectful. Not every child exposed to domestic violence is at risk of impairment” (Nicholson, 3 NY3d at 375). Proof that the child’s physical, mental, or emotional condition was impaired or was in danger of becoming impaired as a result of witnessing the domestic violence is required to support a finding of neglect (see Matter of Elijah J. [Phillip J.], 77 AD3d 835 [2d Dept 2010]; Matter of Briana F. [Oswaldo F.], 69 AD3d 718 [2d Dept 2010]; Matter of Jordan E., 57 AD3d 539 [2d Dept 2008]; Matter of Andrew Y., 44 AD3d 1063 [2d Dept 2007]; Matter of Jay da D.-B., 33 AD3d 998 [2d Dept 2006]).
The allegations of domestic violence in the presence of the children are based solely on Jubilee’s statement to CPS Frye that her father hits her mother all over her body. A child’s out-of-court statements may form the basis for a finding of neglect if they are sufficiently corroborated by other evidence tending to support their reliability (see Family Ct Act § 1046 [a] [vi]; Matter of Kassandra V. [Sylvia L.], 90 AD3d 940 [2d Dept 2011]). Petitioner presented no testimonial or documentary evidence corroborating Jubilee’s statement.
ACS argues CPS Frye’s testimony that respondent was in the mother’s home on March 12, 2015, in violation of the Criminal Court order of protection plus the family’s “history” of domestic violence, are enough to corroborate Jubilee’s statement. The evidence that respondent was present in the home on March 12, 2015, in violation of an existing order of protection does not corroborate Jubiliee’s statement that there is *639 domestic violence in the home, nor does it, standing alone, establish neglect (see Matter of Abbygail H.M.G. [Christine Y.], 129 AD3d 722 [2d Dept 2015]).
The “history” to which ACS refers are the 2011 Family Court proceeding and the 2013 Criminal Court proceeding. Those proceedings are, respectively, five.and three years old. Putting aside the age of those proceedings, which diminishes the evidentiary weight they should be afforded, ACS has provided no legal authority for the proposition that “history” of prior conduct can serve as corroboration of current conduct. Just stating the proposition suggests its weakness.
Even if the court was to accept ACS’s argument that domestic violence history could corroborate a child’s out-of-court statement, there was no evidence that the physical, mental, or emotional condition of any of the children was harmed or placed in imminent risk of harm as a result of any altercations between their parents.
There was no evidence that any child was physically harmed or in imminent danger of being physically harmed during any altercation between the parents (cf. Matter of Ariella S. [Krystal C.], 89 AD3d 1092 [2d Dept 2011] [child three feet away from altercation between mother and father when mother stabbed father]; Matter of Joseph RR. [Lynn TT.], 86 AD3d 723 [3d Dept 2011] [respondent brandishing a gun in the presence of the child]).
Unlike physical injury, which can be observed or established by medical records, whether a child’s mental or emotional condition has been impaired or placed at risk of impairment “may be murky” (Nicholson, 3 NY3d at 370). The fact that a child has witnessed domestic violence, however abhorrent as that might be, is not sufficient to establish that the child’s mental or emotional condition has been actually impaired or placed in imminent risk of impairment (id.). “Impairment of mental or emotional condition” is specifically defined to include
“a state of substantially diminished psychological or intellectual functioning in relation to, but not limited to, such factors as failure to thrive, control of aggressive or self-destructive impulses, ability to think and reason, or acting out or misbehavior, including incorrigibility, ungovernability or habitual truancy; provided, however, that such impairment must be clearly attributable to the ... inability of the respondent to exercise a minimum *640 degree of care toward the child.” (Family Ct Act § 1012 [h]; see Nicholson, 3 NY3d at 369-370.)
The fact that Jubilee allegedly reported that she and the other children were “scared” and ran to the bedroom when fights between the parents broke out does not support a finding of “substantially diminished psychological or intellectual functioning” as described in the statute. Something more substantial is required (see e.g. Matter of Lonell J., 242 AD2d 58 [1st Dept 1998] [repeated vomiting, soiled bedding, poor health, eating problems]; Matter of Theresa CC., 178 AD2d 687 [3d Dept 1991] [behavioral problems, anxiety, bed-wetting, rebellion, withdrawal]; but see Matter of Madison M. [Nathan M.], 123 AD3d 616 [1st Dept 2014] [police observations that the children were crying sufficient]).
Although the court may and does draw the strongest inference that the evidence permits against the respondent for his failure to appear and testify, particularly with respect to matters he would be in a position to refute (Matter of Nassau County Dept. of Social Servs. v Denise J., 87 NY2d 73 [1995]), it was ACS’s burden to prove the elements of neglect, including harm or imminent risk of harm to the children. “[T]he strongest negative inference cannot provide a missing element of proof” (Matter of Tysean P. v Richard S., 39 Misc 3d 1232[A], 2013 NY Slip Op 50837[U], *4 [Fam Ct, Kings County 2013]).[3]
As ACS failed to provide competent evidence to corroborate Jubilee’s hearsay statement or to prove that any of the children suffered any actual harm to their physical, mental, or emotional condition or that they were placed in imminent risk of suffering any such harm, the petition must be dismissed.

. The petition also alleged that the children’s mother, Ashley B., neglected the children by permitting respondent to be in her home despite an order of protection prohibiting him from being there. The proceeding against Ms. B. was adjourned on February 11, 2016 in contemplation of dismissal for six months, with ACS supervision to end on August 10, 2016. This decision applies only to the allegations against respondent.

. One from 2010: one from 2012; one from 2013; and one from 2015.

. ACS also failed to provide competent evidence that the respondent neglected the children by failing to complete the tasks required of him in the order of disposition dated February 1, 2012 (see e.g. Matter of Jamie R., 61 AD3d 876 [2d Dept 2009]; see decision and order denying ACS’s summary judgment motion).